THE STATE v. EULOS KOWERTZ, Appellant.—297 S. W. 358.

Division Two, June 23, 1927.

**1. JURISDICTION: Judge of Another Division: Absence and Request.** A record reciting that the judge of the division to which the case was assigned "now retires from the bench and in the absence and at the request" of such judge the judge of another division of the same circuit court "now presides over and holds this court" complies with the statute (Sec. 2458, R. S. 1919), and such other judge was legally authorized to try the case. It was not necessary for the record to recite the cause of the absence of the regular judge of the division or his reason for the request.

**2. ROBBERY: When Money is Taken by Another: Concerted Acts.** The presence of one at the commission of a felony by another is evidence to be considered in determining whether he was aiding and abetting the other. Where the defendant and another drove to a store in an automobile, and defendant entered and with a gun held up and marched the keeper to a toilet and while he searched the keeper the other left the automobile, entered the store and took $47.60 from the cash register and both then left the store, got in the automobile and drove away, there is sufficient evidence to authorize a finding by the jury that defendant was acting in concert with the man who took the money from the register, and to support a finding that the defendant aided and abetted the robbery.

**3. ———: Alibi: Identification.** Where there is substantial evidence identifying defendant as the robber, and substantial evidence tending to support his alibi, it is for the jury to determine whether defendant was the robber.

**4. ASSIGNMENTS: Instruction.** If the motion for a new trial does not point out specifically wherein the instruction complained of was erroneous, the instruction is not for review on appeal.

5. **ASSIGNMENTS: Abandonment.** Even if the motion for a new trial contains specific assignments of error, they may be treated as abandoned if not considered in appellant's brief.

---

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 99, p. 119, n. 80; 17 C. J., Section 3351, p. 91, n. 76; Section 3559. p. 212, n. 18; Section 3593, p. 255, n. 52. **Judges,** 33 C. J., Section 212, p. 1027, n. 69; Section 235, p. 1037, n. 4. **Robbery,** 34 Cyc., p. 1810, n. 89.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*James H. Anderson, Wofford E. Lewis* and *Bert S. Kimbrell* for appellant.

(1) The Honorable E. E. Porterfield, Judge of Division 7 of the Circuit Court of Jackson County, did not have jurisdiction to try the case, for these reasons: (a) The regular judge of Division 5 of the circuit court, designated under the rules of said court as criminal Division A during the November term, 1925, for the trial of criminal cases, was not divested of jurisdiction to try the case. Autenrieth v. Railroad, 271 Mo. 248; Ladd v. Forsee, 163 Mo. 506; Bank v. Graham, 147 Mo. 250. (b) The Honorable Allen C. Southern, Judge of Division 5 of the circuit court, had exclusive jurisdiction of the case. Haehl v. Wabash Railroad Co., 119 Mo. 337; State ex rel. Chandler v. Allen, 235 Mo. 303; Laws 1921, sec. 7, p. 221. (c) The record shows that the Honorable Allen C. Southern was in no way disqualified from trying the case. Cases supra. (d) The record shows no statutory disqualification or disability upon the part of the Honorable Allen C. Southern to try the case. Cases supra. (e) The record does not show or recite the reason of the disqualification of the Honorable Allen C. Southern to try the case. Sec. 2448, R. S. 1919. (f) The record does not show or recite the reason for calling in the Honorable E. E. Porterfield to try the case. Section 2448. (g) The Honorable E. E. Porterfield did not acquire jurisdiction to try the case. Cases supra. (h) Upon the record, presumptions cannot be invoked to uphold the jurisdiction of Judge Porterfield. (2) The court erred in overruling the demurrer of defendant at the conclusion of all the evidence in the case, for these reasons: (a) The offense shown by the evidence was the offense of assault with intent to rob, or the offense of grand larceny. (b) The evidence does not show the consummated offense of robbery. (c) The evidence does not show that the defendant in person took the money mentioned in evidence, or any part thereof. (d) The evi-

dence does not show concert of action between the "other man," or the "second man," and the defendant in the taking of the money mentioned in evidence, or any part thereof. State v. Johnson, 111 Mo. 578; State v. Massey, 274 Mo. 578; State v. Lasson, 292 Mo. 155; State v. Friedman, 280 S. W. 1023. (3) The court erred in giving upon behalf of the State Instruction 1, for the reason that there is no evidence that the defendant in person took, stole, and carried away any money of W. A. Greenwell. Cases last above.

*North T. Gentry,* Attorney-General, and *Smith B. Atwood,* Assistant Attorney-General, for respondent.

(1) Sections 2450, 2451 and 2452, Revised Statutes 1919, and the rules of the Jackson County Circuit Court made in pursuance thereof, must be looked to in determining the question whether or not the trial judge had jurisdiction of this cause. (a) The several judges of the Circuit Court of Jackson County are elected as circuit judges of that court—not as circuit judges of specific divisions thereof. State ex rel. v. Allen, 235 Mo. 305. (b) The creation of the various divisions is merely for the purpose of expediting the work of the court, but whether a cause be heard in one division or in another, the forum is the same. State ex rel. v. Allen, 235 Mo. 305. (c) In recognition of this fact, the statute provides that when any such judge is not occupied with the business assigned to him, he shall, as far as practicable, aid the other judges in discharge of their duties. Sec. 2452, R. S. 1919. (d) Judge Porterfield was called to preside over this cause in the absence of Judge Southern. It follows that Judge Porterfield had jurisdiction to hear this cause. State ex rel. v. Allen, 235 Mo. 305. For other cases applicable to the instant case, see State v. Johnson, 272 S. W. 931; Hargadine-McKittrick D. G. Co. v. Garesche, 227 S. W. 824; Johnston v. Ragan, 265 Mo. 443; Fox-Miller Grain Co. v. Stephans, 217 S. W. 994. (2) The person lawfully in possession of property taken in robbery is the "owner" within the meaning of the statute. State v. Craft, 299 Mo. 332; State v. Williams, 183 S. W. 308; State v. Carroll, 214 Mo. 392, 31 L. R. A. (N. S.) 311. (3) There was ample evidence introduced by the State to make a case for a jury to decide.

HENWOOD, C.—The appellant was prosecuted and convicted in the Circuit Court of Jackson County, on a charge of first degree robbery. The jury assessed his punishment at imprisonment in the penitentiary for a term of seven years, and he was sentenced accordingly. In due time he appealed.

In all its essentials the State's case rests on the testimony of the prosecuting witness, W. A. Greenwell. The following material facts and circumstances are gathered from his testimony. On September 29, 1925, and for a short time before, Greenwell was the manager and in charge of one of the Piggly Wiggly Bird Company's chain of grocery stores located at or near the junction of Thirty-seventh Street and Benton Boulevard in Kansas City. The front entrance to the store was equipped with a turn-stile and extending through the store were several aisleways, one of which extended around the store room and back to the checking counter and to the way out through another turn-stile. On the morning of September 29, 1925, Greenwell opened the store "about a quarter after six." It was daylight, but all the lights in the store were burning. He put $47.60 in the cash register for change, leaving "about ten or fifteen cents" on his person, and had started "to dust or kind of clean up around" when the alleged robbery occurred. As to what happened we quote the witness, in part, as follows:

"Q. Go ahead? A. So I put the money in, and then we usually dust around. So I hadn't been there over fifteen minutes when this car drove up in front, dark roadster car, with two men in it, and one man got out and came in; he went around to a side entrance by the candy counter, where there is an entrance to a back room, and he inquired the way in; so I told him, and he took a can of apricots off the shelf and came on around and set it down on the checking counter, which I was standing behind, facing him, and he handed me a five-dollar bill, and when I stepped, turned around to ring this money up, when I opened the register he stepped around to one side and poked me and told me to stick them up, and I did.

"Q. What did he poke you with? A. A gun.

"Q. Did you see the gun? A. Yes, sir.

"Q. What kind of gun was it? A. It looked to be a small automatic.

"Q. The kind as to color? A. Dark gun.

"Q. A dark blue? A. I don't know whether it was blue. It was smoke color, steel or something like that.

"Q. Go ahead. A. He told me to come out from behind the counter. He took me to the back of the store, and as I was coming out the other fellow got out of the car and was coming in. He took me to the back and put me in the toilet and while he was doing this the other man came in and was taking the money from the register, and he also searched me while I was in the toilet.

"Q. Did he take anything from you? A. He didn't take anything from me. And he asked me if that was all I had and I told him yes. And he told me to stay in the toilet until he got away, and

when I heard the turn-stile click I came out to the telephone and notified the cops, also my superintendent, and that was all.''

He further testified that he examined the cash register after these men left and that $47.60 had been taken from the register. While on the stand he pointed out appellant in the courtroom and said he was positive that appellant was the man who used the gun on him. He also said that he had identified appellant at the police station ''a week or two'' after this occurrence, and that he was looking at four men ''in the show-up room'' at the time.

On cross-examination he said the men were in an open car with the top up and no curtains on, and that he could see the faces of the men; that he saw the second man get out of the car and saw him coming in the store as he was being taken toward the toilet by the man who held him up; that he observed the second man only a few seconds at a distance of twenty or twenty-five feet and could not identify him; and that the man who held him up wore a mustache.

On appellant's side the proof tends to establish an *alibi*, and also that appellant never wore a mustache.

Appellant took the stand and denied that he committed the alleged robbery and further said that he was not in Kansas City on September 29, 1925.

Tom McMullen testified that on Saturday evening, September 26, 1925, he and appellant left Kansas City on a Frisco train for Conway, Missouri, and that appellant's uncle, Charles Skinner, met the train at Conway the next morning and took them to his home on a farm near Conway, where they spent the day (Sunday, 27th); that the following day (Monday, 28th) Charles Skinner took them to the home of Harrison Skinner, another uncle of appellant, near Mack's Creek, Missouri, and that they attended a Baptist revival meeting in that vicinity that evening; that on the next day (Tuesday, 29th) they went to Linn Creek, Missouri, in search of work on the dam then under construction at that place; that they visited with appellant's uncles until the night of October 5th, when they were arrested by the sheriff at Conway on a charge involving the theft of an automobile at Kansas City; that the charge against him in connection with the automobile theft was dismissed.

Both of appellant's uncles, Charles and Harrison Skinner, attended the trial, and their testimony, in the main, is in corroboration of McMullen's story.

Appellant's wife testified that appellant left their home in Kansas City on Saturday night, September 26th, to go to his uncle's place at Buffalo, Missouri, and to get a job on the dam at Linn Creek; and that he never wore a mustache. On cross-examination she denied that she called on Mr. Greenwell and asked him if he would dismiss the case, if she returned the money that was stolen, paid the costs

and paid him for the time he was out. She admitted that she went to see Mr. Greenwell, but only asked him if he was positive of his identification.

Several of appellant's neighbors. close friends and acquaintances testified that he had never worn a mustache.

In rebuttal for the State, W. R. Phipps, a police officer of Kansas City, testified that McMullen told him in the presence of appellant that they left Kansas City for Buffalo in an automobile and that they wrecked the automobile. This witness further testified that while at Buffalo he asked appellant "in a kidding way" where his mustache was and "he said the sheriff had gave him a razor and he shaved it off." L. J. Pressley, Prosecuting Attorney of Dallas County, also testified in rebuttal that he heard officer Phipps ask appellant in the jail at Buffalo where his mustache was and appellant replied that he had shaved it off; and that he "couldn't say" whether the question was asked "jokingly" or not. W. A. Greenwell, in rebuttal, testified that appellant's wife came to his store and asked him if he would consent to dismiss the case, if she returned the stolen money and paid the expenses and paid for his time and trouble; and that she did not say anything else.

I. It is earnestly insisted that Judge E. E. Porterfield, who was substituted for Judge Allen C. Southern, was not legally authorized to try this case.

**Judge of Another Division.** The record recitals show that this case was lodged and the arraignment had and the plea of not guilty entered in Division 5 of the Circuit Court of Jackson County, at Kansas City, designated as Criminal Division A, in which Honorable Allen C. Southern was then presiding as the regular judge thereof. The record entry challenged by appellant as insufficient to show that Judge Porterfield was vested with authority to try the case, reads as follows:

"And afterwards, on the 4th day of January, 1926, the same being the 45th day of the regular November term, 1925, of said circuit court, the following proceedings, among others, were had and entered of record herein, to-wit:

"STATE OF MISSOURI ⎱ SS.
COUNTY OF JACKSON ⎰

"Be it remembered, that on this day at the hour of two o'clock P. M the Honorable Allen C. Southern, who regularly presides over Division No. 5 of the Circuit Court of Jackson County, Missouri, now designated under the rules of said court as Criminal Division A during the November Term, 1925, thereof, now retires from the bench and *in the absence* and *at the request of* the Honorable Allen C. Southern, comes now the Honorable E. E. Porterfield, the judge who regularly presides over Division No. 7, the same being next in number

of Division No. 6, now designated under the rules of this court as Criminal Division B, trying criminal cases, the Honorable E. E. Porterfield now presides over and holds this court as aforesaid; others present being William H. Harper, Clerk of the Circuit Court of Jackson County, Missouri; John L. Miles, Sheriff of Jackson County, Missouri; Forest W. Hanna, Prosecuting Attorney of Jackson County, Missouri; Hugh D. Muir, Official Reporter, when the following proceedings were had and entered of record herein, to-wit:'' (Italics ours.)

Section 2458, Revised Statutes 1919, formerly Section 3977, relating to the Circuit Court of Jackson County, among other things, provides that ''. . . whenever the judge of any division of said circuit court shall be sick, *absent,* or from any cause is unable to hold any term or part of term in such division, such term or part of term may, *by request of such judge of such division, be held by a judge of any other division of said circuit court."* (Italics ours.)

Section 2459, Revised Statutes 1919, says that: ''If the regular judge of any division shall by requirement of law be serving as judge of some other court, he shall, within the meaning of Sections 2458 and 2459, be considered as absent or unable to hold his court during such time as his service in such court shall last.''

Manifestly, the latter section (2459) was intended only to settle the question of the legal absence of a judge from his own court during his service as judge of some other court, even though he may not be absent from the county or from the court building, and was not intended to have any bearing on other causes of absence.

Section 2458, above quoted, expressly authorizes the judge of any division to preside over and to hold the court of the judge of any other division, *in his absence* and *by his request.* The record entry made fully meets the requirements of the statute, it being recited therein that ''the Honorable E. E. Porterfield now presides over and holds this court in the absence and at the request of the Honorable Allen C. Southern.'' It is not necessary to recite in the record the cause of the absence or the reason for the request, to invoke the sanction of the statute. This same question was before this court in the case of Johnston v. Ragan, 265 Mo. 420, on substantially the same record entry, and in a very able and exhaustive discussion of the subject, Walker, J., speaking for the court, says:

''In the argument it was rather timorously contended that the record entry of the order requesting Judge Park to try this case was insufficient in not stating the reason therefor. This contention misconceives the meaning of the order; it clearly states the reason to be 'the absence and inability of Judge Powell to attend and try the case.' This is sufficient. In State v. Newsum, 129 Mo. l. c. 159, we held that it was not necessary for the record to disclose the reason

for requesting another judge to attend and try a case, because the authority thus exercised was in obedience to an express statute and a reason therefor was consequently unnecessary. The Newsum case was affirmed in State v. Gillham, 174 Mo. l. c. 673, which held in addition that the power thus conferred was vested in the judge in whose court the case was pending and not in the court itself and that he was authorized to make the request in chambers or even in vacation.''

''In the city of St. Louis, which constitutes the Eighth Judicial Circuit, the practice has long prevailed, in the absence of any statute; for any circuit judge if sick, absent or otherwise temporarily unable to hold court, to request another judge of the court, of which there are now fourteen subdivisions, to hold court for him. The validity of this practice was considered and upheld in an opinion rendered by VALLIANT, C. J., in State ex rel. v. Allen, 235 Mo. 298, in which it was held that the judge of the court who answers such request does not intrude into the judicial premises of the judge who invites him or encroach on his jurisdiction, for the judicial authority he exercises arises from his election and qualification as a judge of the same circuit; and the fact that he has been assigned to a division does not make him any the less a judge of the circuit court of the particular circuit; it only apportions to him his share of the work and gives him exclusive jurisdiction thereof. The ruling in the Allen case, supra, is not cited as a precedent here because of the existence of the statute (Sec. 3977, supra), especially applicable to the class of judicial circuits to which Jackson County belongs; if not controlling, the lucid reasoning of this case may serve to dissipate the many technical objections urged by the defendants to the calling in of Judge Park in the case at bar.''

Counsel for appellant have displayed great industry in reviewing the rulings of this court in numerous cases involving the same general proposition, but the cases cited and relied on by appellant's counsel, in their brief, deal with situations entirely different from the situation now before us; in each and all of the cases referred to the substitution of one judge for another judge was made without any authority in law. It follows that such cases have no application here, where we have express statutory authority for the substitution here involved.

II. This brings us to the contention that the evidence is not sufficient to sustain a judgment of conviction for robbery against appellant, for the reason that the evidence fails to show **Concerted Acts.** that the man who ''held up'' Greenwell was acting in concert with the ''other man,'' who took the money from the cash register. In the face of the plain, outstanding facts this contention cannot be seriously considered.

317 Mo. Sup.—28.

.The man who "held up" Greenwell and the "other man" were driving in the automobile as *companions.* The "other man" continued to sit in the automobile for a little bit, with nothing to obstruct his view of the progress of the "hold up" going on inside of the store. At the *opportune moment,* after he could see that the storekeeper was *covered* and that the cash register was *opened,* he *got out* of the automobile and with quick dispatch *entered the store* and *took the money* from the cash register. By this time the *hold up man* had *searched* the storekeeper in the toilet. With *the job well done* the *hold up man* and the *other man* left the scene of action as *companionable* as they came. But it matters not whether they left together or not, after the crime was consummated. And the argument of appellant's counsel that "the circumstances disclosed by the record show that the idea of taking the money from the register was not in the mind of the person who put the gun on Greenwell" will not be dignified with further discussion. We attribute this argument only to the zeal of counsel. It is our opinion that "the circumstances disclosed by the record" have all the earmarks of a *well planned* and *well executed* robbery.

The rule to be applied here is elementary and is universally followed. It is well stated in 16 Corpus Juris, 133, as follows: "The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting. And it has also been held that presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred."

It was for the jury to say whether there was a *common purpose* and *design* and a *concert of action* between the *hold up man* and the *"second man."* Likewise, it was for the jury to pass on the evidence tending to establish an *alibi* for appellant and Greenwell's identification of appellant as the man who poked him with a gun and took him to the back of the store and searched him. On the whole, the evidence presented a clear case for the jury and the trial judge properly overruled the demurrer offered at the close of all the evidence. Obviously, the jury was satisfied on each and all of these questions, and, there being substantial evidence to support their verdict, it is not our province to pass on the weight of the evidence or its probative force.

III. The complaint against the State's instruction numbered 1 is not reviewable here because the motion for new trial does not point out *specifically* wherein the instruction is erroneous. [Laws 1925, **Assignments.** p. 198; State v. Standifer, 289 S. W. 856.] It may be said, however, that the objection to this instruction mentioned in appellant's brief is fully answered in our con-

clusion on the sufficiency of the evidence. Other assignments of error in the motion for new trial, which might otherwise be reviewable under the present rule (Act of 1925), may be treated as abandoned, not being considered in appellant's brief. [State v. Murrell, 289 S. W. 859.]

We find no error in the record proper, and in accordance with the views announced above the judgment is affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.