STATE of Missouri, Respondent,

v.

James Otis FIELDS, Appellant.

No. 45733.

Supreme Court of Missouri,
Division No. 2.

May 13, 1957.

W. H. Howery, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

James O. Fields appeals from a judgment imposing a sentence of five years imprisonment for robbery in the first degree. §§ 560.120, 560.135, RSMo 1949, V.A.M.S. Defendant's main contention on this appeal, stated differently in three of the points in his brief, is to the effect the State failed to make a submissible case that he was the person who committed the robbery.

Halgene Lucas, a driver for the Yellow Cab Company, answered a call from apartment 117 at 1305 Troost avenue, Kansas City, Jackson county, Missouri, about 11:00 p. m. January 31, 1956. He testified that when he started to go in the building, "I was met at the door by this fellow here." Lucas, following instructions, drove "around the corner" to 1103 East 13th and, later, to 2122 Tracy to pick up, according to his passenger, his girl friend and his "buddy," but neither came out to go with him. Lucas was next directed to return to 1305 Troost, and, upon arriving there, to again drive to 1103 East 13th. Arriving at 1103 East 13th, Lucas turned on the bright light in the front of his cab, rung up the fare on his meter and started turning around to hand his passenger the change when the passenger placed a blue steel .45 automatic against his neck, told him that would not be necessary, and "Hand me your billfold." At this time he had a good look at his passenger's face. The passenger then robbed Lucas of one five and seven one dollar bills, directed Lucas to turn off the lights on the cab and to back into a nearby alley. When Lucas had backed into the alley about 25 to 30 feet, his passenger got out and ran down the alley.

Lucas testified the robbery occurred about 11:28 p. m. He reported to the Yellow Cab road supervisor. The police arrived about 11:45.

When Sergeant Faler arrived Lucas informed him what had happened. The alley was blocked by Lucas' cab at the time and Faler circled the block. He stopped a young man, about 19 years old, at 13th and Troost. Lucas informed him this man was not the robber.

Officer Darr checked the second floor of 1305 Troost and stopped a colored boy coming from the bathroom. He took the boy downstairs to Sergeant Faler, who informed him he had already questioned this boy, and Lucas had stated he was not the robber. The boy was released. Darr testified on direct examination that defendant was not the boy he stopped.

Officer Cook testified he stopped defendant about 11:40 p. m. January 31, 1956, just south of 14th street on Lydia (near the scene of the robbery); that defendant told him he had been visiting a friend, was going home, and that another officer had questioned him on 12th street about the cab robbery. He did not arrest defendant. He did not stop defendant at Truman road and Troost.

Sergeant Faler was off duty at 12 m. He and two other officers were in a car on their way home and noticed a man shaking the door at "Milgram's" in the vicinity of 1305 Troost. They, driving out of sight of the man, got out of the car and separated. The other two officers stopped the man, who was the defendant, and questioned him. Defendant told them he had just gotten off a train and was going to Union Station to get some clothes out of a locker; and, a little later, that he had been to a friend's house on 23rd street. Defendant asked if they were trying to connect him with the robbery of the cab driver at 13th and Troost. Faler, who had come up and stood behind defendant, stepped in front of him at this time and defendant said: "You searched me and questioned me at 13th and Troost." Faler answered: "I questioned a man but it was not you." Defendant also stated that no other officer had talked to him about the robbery, but later said an officer had stopped him at Truman and Troost, and that was the only other officer who had talked to him.

Defendant was arrested and taken to the police station. He had no gun and did not have the $12.

Lucas was positive in his identification of defendant as the robber at the "showup" the morning after the robbery; and again at the trial was positive in his identification of defendant as the robber. Lucas is 5 feet 4½ inches tall. He testified he had estimated his passenger, while standing on the steps at the apartment, was 1½ to 2 inches taller than he, and his weight at 140 to 160 pounds, but that it was difficult to judge the weight of one wearing winter clothes. His passenger was a light-skinned Negro and had no moustache that evening. It had been sleeting or snowing that day and the streets were icy. Lucas at the trial identified certain articles of clothing belonging to defendant as being similar to the clothing defendant wore on the night of the robbery; such as new short rubbers, a reddish-brown suede jacket, and what he, being in the Army, called suntan pants, and a fatigue or baseball cap.

Defendant testified: He was 30 years of age, 5 feet 4½ inches tall, and weighed 135 pounds. He has always worn a moustache. He worked as a laborer for the Missouri Pacific Railroad. He returned to Kansas City from Iola, Kansas, January 28th and placed a little bag containing clothing in a locker at Union Station. He had never been in trouble before and did not commit the robbery. On the night of January 31st he attended a double feature show at the Castle Theater, 12th and Paseo, and later an officer stopped him at 13th and Troost. The cab driver did not identify him as the robber. He was released. When he came out of a bathroom at 1307 Troost, he was stopped by another officer, was taken to the first officer who stopped him, and, following a conversation between the two, was again released. He was stopped at Truman road and Troost and permitted to go. Then he was stopped in the vicinity of "Milgram's" where he denied to the officers that he was

shaking the door, but he was taken into custody.

After defendant rested his case, the State recalled Officer Darr who this time testified that the man he stopped in the apartment at 1305 Troost was defendant. Sergeant Faler was also recalled and stated that the man Darr brought to him was defendant. This testimony of the officers differed from their testimony in chief. Sergeant Faler repeated his former testimony that the man he stopped at 13th and Troost was not defendant.

We have read defendant's citations: State v. Gregory, 339 Mo. 133, 96 S.W.2d 47, 50 (I); State v. Goodwin, 333 Mo. 168, 61 S.W.2d 960 (II); State v. Kelsay, Mo., 228 S.W. 754, 756 [2]; and State v. Brown, 290 Mo. 177, 234 S.W. 785, 786 (I). The evidence was held sufficient to sustain the conviction in all but the Kelsay case. The Kelsay case involved a charge of manslaughter and it was considered that the evidence did not establish "even 'ordinary' negligence, much less 'criminal' negligence, as charged in the information." Defendant's cases do not establish error here.

■ The evidence favorable to the State and the legitimate inferences therefrom are for consideration in passing on the sufficiency of the evidence to sustain a conviction, and evidence to the contrary is rejected. State v. Sheard, Mo., 276 S.W.2d 196, 200 [7, 9], and cases cited. Consult State v. Tompkins, Mo., 277 S.W.2d 587, 590 [1]. In the instant case the victim positively identified defendant as the robber, and there was corroborating testimony of record. The fact that some discrepancies with respect to the testimony of the officers covering the description of the robber given them by the victim at the scene and the victim's description of defendant, defendant's size and his clothing, at the trial, went to the weight and credibility of the victim's testimony rather than the substantiveness of the identification. The fact that Officers Faler

and Darr on being recalled changed their testimony with respect to the man in the bathroom at 1305 Troost did not destroy Lucas' identification of defendant. Lucas did not see this man at the scene. The testimony identifying defendant as the robber was as substantial as the testimony considered sufficient in cases cited by defendant. See also State v. Brooks, Mo., 159 S.W.2d 646 [1]; State v. Smith, Mo., 298 S.W.2d 354 [1] and cases cited; State v. Thompson, Mo., 238 S.W. 115, 117 [4]; State v. Kowertz, 317 Mo. 426, 297 S.W. 358, 361 [5]. Identifications of a defendant's voice have been considered sufficient. State v. Ransom, 340 Mo. 165, 100 S.W.2d 294, 296 [2] and cases cited.

■ The remaining point in defendant's brief, to wit: "The court erred in refusing to allow instructions 'A,' 'B' and 'C' offered by appellant as questions of law necessary for the guidance of the jury," based upon a like assignment in the motion for new trial, is too general to preserve any issue for review. State v. Londe, 345 Mo. 185, 194 [5], 132 S.W.2d 501, 506 [12]; State v. Miller, 357 Mo. 353, 208 S.W.2d 194, 201 [15]; State v. Mayberry, Mo., 272 S.W.2d 236, 242 [17, 18, 22]. Furthermore, the given instructions covered the law of the case.

Our examination of matters of record proper discloses no reversible error. They are in proper form and sufficient.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.