STATE of Missouri, Respondent,

v.

James A. DEITER, Appellant.

No. 54444.

Supreme Court of Missouri,
Division No. 2.

Nov. 10, 1969.

**610**

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Grace S. Day, St. Joseph, for appellant.

PRITCHARD, Commissioner.

Appellant, alleged to have committed two prior felony offenses, was charged and convicted by the jury of the crime of burglary in the second degree (under the "accessory before the fact" statute, § 556.170, RSMo 1959, V.A.M.S.). During the course of the trial and before the submission of the case to the jury, the court read a stipulation that appellant had been convicted of the crime of forgery in 1963, and in 1966 had been convicted of the crime of burglary in the second degree, for each of which convictions he was imprisoned in accordance with the sentences in the Department of Corrections of Missouri. Counsel for appellant stated that the stipulation was correct, and the court stated, "All right, that takes care of that part of it then." The case was submitted to the jury for a finding of guilt or innocence on the burglary charge. Upon hearing and overruling of the motion for new trial, the court adjudged that appellant had two previous convictions, that he was found guilty of the instant offense and fixed punishment at five years imprisonment in the Department of Corrections.

Several of appellant's points repetitively attack the submissibility of the state's case, and they will be treated together. Point I is that the court erred in refusing to direct a verdict in favor of appellant when the testimony presented was that of accomplices, and there was no corroboration of the commission of the crime; Point IV states that there was no proof that (accomplices) Danny Wolfe or Gary Lynn Peek had committed a crime, and (the jury) could not determine if appellant did wilfully and feloniously aid, abet and assist them to commit a felony; Point XIII is that the state failed to establish the elements of crime necessary to find appellant guilty of aiding, abetting or assisting in the commission of a burglary; and Point XVII states that the court erred in failing to direct a verdict of acquittal on the basis that the state failed to prove that appellant had any knowledge of the commission of any crime, and failed to prove that he did aid, abet or assist therein, "and that the only evidence presented was that defendant was in the automobile which arrived at the scene, which did not prove the elements of the crime charged in the Information, all to the bias and prejudice of the defendant."

On October 23, 1967, Cecil Kellison, a former employee of the Prawitz-Bayer Repair Shop in St. Joseph, Missouri, picked up Larry Clapsaddle and appellant, James Deiter, on a street of that city and drove thence to the Rawhide Inn in Wathena, Kansas. There the three met Gary Peek and Danny Wolfe, and the five of them sat down at a picnic table and proceeded to consume a considerable number of pitchers of beer. Wolfe was seated across from Kellison and the two of them were talking about breaking into the Prawitz-Bayer building. They agreed to it while all five were sitting around the table. They then left, drove around St. Joseph for a time and stopped at the Trax Filling Station inside of which Kellison and Wolfe (alone) talked further about breaking into Prawitz-Bayer. They chased some other "kids" who had made remarks to them, but the police broke that up. They then went straight to the Prawitz-Bayer building and stopped behind it in the alley.

Kellison told the four others to stay in the car and he got out and tried the north window, which he found to be locked. He went to the south windows and found them also locked. He heard glass break, ran back to the north side of the building where he saw Peek and Wolfe (who had a shoe in his hand) standing at the window. Clapsaddle and appellant were then still sitting in the car. Kellison saw that the window was broken so he opened it and went inside directly upstairs where the paint spray guns were kept. He took three of them, gave them to Peek who put them in the car. He told Peek there was no money in the safe. Kellison did not see appellant at the time as the car was not visible from his position.

Kellison then looked inside the building to see if there was anything else he wanted, but there was not. He left and got inside the car and saw only Clapsaddle therein. He asked Clapsaddle where Peek was and he answered that he was in the building. Kellison went back inside to get Peek and Wolfe, at which time the police arrived. With Peek and Wolfe behind, Kellison ran down the passageway between the buildings and an officer caught Kellison in front of the buildings. Kellison never saw appellant at all during these happenings.

On cross-examination, Kellison testified that he was the moving party in the incident, it was more or less his idea, the car was his, and he was driving it. At the table in the Rawhide Inn appellant could not have heard the conversation unless he was listening. Everybody was talking about different things and appellant was talking to someone else at the time. Kellison could not say that appellant heard it; he was not a participant at all in the conversation. There was no further conversation after Kellison and Wolfe got back into the car at the Trax Filling Station until they arrived at Prawitz-Bayer. He did not tell appellant to be a lookout in the car; appellant had nothing to do with the planning, and he did not get out of the car, or do "anything that would impli-

cate (sic) that he had any knowledge of this crime."

Lawrence Clapsaddle testified that after he and appellant were picked up by Kellison and went to the Rawhide Inn, Kellison, Peek, Wolfe and appellant had a discussion in which something was said about breaking into a grocery store. Clapsaddle took part in that conversation "a little bit." They left the Rawhide Inn, got gasoline at the Trax Filling Station, followed "some guys," then pulled into an alley behind "Mary Ann's" (apparently near Prawitz-Bayer). Kellison, Peek and Wolfe got out of the car and went into a passageway. Appellant was then sitting in the car. A window was broken and Kellison (shortly) came out of the passageway with three spray guns and threw them into the back seat of the car, but then opened the door, got the spray guns out of the back seat and put them in the trunk. Kellison then went back into the passageway. Appellant opened the door, got out and went behind the car. Clapsaddle did not know where appellant went, and did not see him again. The next thing that happened was that somebody "hollered 'bust'" (Clapsaddle thought it was appellant) and Clapsaddle "took off running." He did not know whether appellant was in the building.

On cross-examination, Clapsaddle testified that while they were sitting in the Inn there was no conversation about breaking into the Prawitz-Bayer building, nor was there any such (specific) discussion when they were driving around. When they pulled up at Prawitz-Bayer, Kellison got out saying that he wanted to go to the bathroom. Peek and Wolfe got out of the car and when they were in the passageway (between the buildings) they had a conversation about the money. Appellant was not with them at that time. At the time Kellison took the spray guns from the back seat and put them in the trunk, Clapsaddle asked appellant what was going on, and appellant answered that he did not know and got out of the car.

Rubie Williams, who lived next door to Prawitz-Bayer, heard a noise and voices in the back on the evening of October 23, 1967. She looked and saw two men at the Prawitz-Bayer north window, and inside the building. She called the police and saw them chase one man between the buildings, "and then one run from the back of my garage, across my lot and hid behind a big white truck." The man ran from the area where they were going in the window of Prawitz-Bayer. She watched for quite awhile and the police did not go over (to the truck) so she called them again. Then the police went over there and got the man out from under the truck. Mrs. Williams did not know who the man was and could not make an identification of him.

Officer John Davis saw appellant underneath the truck at about 11:00 p. m. "We ran to the truck. There was a man hiding under the truck, back in front of the rear wheels. He was under the bed. We pulled the man out, frisked him, cuffed him, and took him back over here and Officers McDowell and Jones then took him to the station while we were busy with the rest of the individuals there at the scene." The man was about seventy-five feet from the building.

■ It was not necessary that the testimony of the accomplices, Kellison and Clapsaddle, be corroborated. State v. Penn, Mo., 413 S.W.2d 281, 282, quoting State v. Harris, Mo., 295 S.W.2d 94, 95 so holds: "Their testimony was credible, was uncontradicted, and was 'such that reasonable minds might believe it.'" See also State v. Gridley, Mo., 353 S.W.2d 705, 706 [1, 2]; and State v. Brim, Mo., 339 S.W.2d 775, 780 [4]. There was proof by the direct testimony of Kellison that Danny Wolfe and Gary Lynn Peek participated in breaking into the Prawitz-Bayer building and, as below developed, there was proof from which the jury could find that appellant aided, abetted and assisted in that crime.

■ Appellant was present at the picnic table when the burglary of the Prawitz-Bayer building was discussed between Kellison and Wolfe. There is, of course, no direct evidence that appellant heard the conversation and agreed to it. But appellant did accompany the four thereafter to the burglarized building where he remained in the car with Clapsaddle. He was present when Kellison (as the jury could find) opened the car door and threw the three stolen spray guns into the back seat, then opened it and removed the guns and placed them in the trunk. He got out of the car thereafter, and the jury could find that appellant "hollered 'bust'" when the police arrived since the evidence is that at that time only he and Clapsaddle were in the immediate vicinity of the car. There is one additional confirming circumstance, established by positive evidence, which with others could be considered by the jury in determining appellant's criminal intent and guilty knowledge of the crime: Appellant fled from the scene and hid under the truck some 75 feet away while his companions were being apprehended by the police. Sometime later the police found him under the truck, to which they were directed by Mrs. Williams, and appellant was there positively identified. For cases holding that the fact of flight may be considered against the accused on the question of his guilt or innocence see State v. Williams, Mo., 382 S.W.2d 597; State v. McDaniel, Mo., 392 S.W.2d 310; and State v. Aubuchon, Mo., 394 S.W.2d 327. While presence alone at the scene of the crime is insufficient to make out an "aiding and abetting" case (State v. Odbur, 317 Mo. 372, 295 S.W. 734, 736 [5, 6]), the above related additional facts and circumstances certainly connect appellant to the burglary as an aider and abettor. There was thus a sufficiency of evidence to support the verdict. In the case of State v. Corbin, Mo., 186 S.W.2d 469, 471 [1, 2], State v. Kowertz, 317 Mo. 426, 297 S.W. 358, 361 was quoted, "'The presence of one at the commission of a felony by another is evi-

dence to be considered in determining whether or not he was guilty of aiding and abetting. And it has also been held that presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.'" All of the above-enumerated points attacking the submissibility of the state's case are ruled against appellant.

■ The first amended information charges appellant with feloniously aiding, abetting and assisting Peek and Wolfe with the burglary. (Stealing was also charged, but was not submitted to the jury.) The verdict of the jury found appellant "guilty of burglary in the second degree, as defined in Instruction No. 5." In essence, that instruction required the jury to find that Peek and Wolfe broke a closed window and entered the repair shop, that appellant was present, knew the acts were unlawful, and with intent to do so did aid and abet or assist them, then in that event the jury would find appellant guilty of burglary in the second degree. By Point II, appellant says the verdict "is contra to the charge in the Information, and therefore, invalid and should be set aside." Cited is Supreme Court Rule 27.01, V.A.M.R., but it is not suggested how or why the verdict is contra to the charge. The point is without merit as § 556.170, supra, abolished the distinctions between accessories before the fact and principals. State v. Edgen, 181 Mo. 582, 80 S.W. 942. The charge, the verdict and the instruction are connected in appropriate language, and read together are clear and do charge and instruct concerning burglary in the second degree, which appellant says they do not under his Point III(b).

■ Instruction No. 8 refers to the forms of verdict which the jury might employ. Appellant says the instruction sets forth the guilty verdict first, and the not guilty verdict second, implying that the court felt appellant was guilty and that the jury should return a verdict of guilty against appellant, "in conflict with constitutional provisions of the United States and the State of Missouri, in that it implies that the defendant is guilty unless he has proven himself innocent, and places the burden of proof upon the defendant rather than upon the State." The instruction is not susceptible to any infirmity which appellant charges against it. It is not pointed out how it could conflict with any constitutional provision. It is the usual form of verdict instruction, and the mere order of possible verdicts could not imply that the court felt that appellant was guilty. Point III(a) is overruled.

■ Point V, that "The Court erred in giving each and every Instruction as against the burden of proof and weight of evidence against said defendant," presents nothing for review as it is lacking in specificity. Supreme Court Rules 28.18 and 83.05(e), V.A.M.R. State v. Mintner, Mo., 429 S.W.2d 762, 764 [4].

■ State v. Aubuchon, Mo., 381 S.W. 2d 807, and State v. Phillips, Mo., 324 S.W. 2d 693, among other cases, hold that there is no error in the court's failure to instruct that no inference can be drawn from the fact that appellant presented no evidence or that he failed to testify in his own behalf. Point VI, on this contention, is without merit.

■ Instruction No. 2 told the jury that the information in the case is a mere formal charge, and is no evidence whatever of the guilt or innocence of appellant. He says that the information was never read to the jury or had not been formally referred to, "and only led to confusion on the part of the jury, making it impossible for them to render a fair verdict after their deliberation." The constitutive facts of the offense were contained in Instruction No. 5 fairly submitting for a finding that appellant was an aider, abettor or assister in the burglary. State v. Cooley, Mo., 221 S.W.2d 480, 484 [5–7], held that a similar instruction was

not confusing or ambiguous. Point VII is overruled.

Without citation or argument, appellant attacks Instruction No. 3, which is on the subjects of presumption of innocence and reasonable doubt. His contention that the instruction improperly shifted the burden of proof to him is without merit. Point VIII is overruled.

Instruction No. 5 defines direct and circumstantial evidence. Appellant says the instruction led the jury to believe that it could convict appellant without any additional corroboration of the testimony of accomplices. As above held, in this type of case, no corroboration of accomplice testimony is necessary, and Point IX is without merit.

The main instruction (No. 5) is attacked on the ground that there was no evidence pertaining to the facts set forth therein. Instruction No. 5 is discussed above as to the submissibility of the state's case. The facts are in evidence and were submitted in the instruction for a finding. It is not "contra to the charge set forth in the Information"; no prejudice is discernible from the fact that it sets forth a finding of guilt ahead of a finding of not guilty, the alternatives available to the jury; and it did not place the burden of proving his innocence upon appellant. Instruction No. 5 is without error, and Point X is overruled.

By Point XI, appellant contends that the court directed a verdict of acquittal at the conclusion of the case but failed to instruct the jury to disregard any testimony with reference to stealing, "leading the jury to believe that they were to consider all the evidence in the case, and therefore, said verdict was rendered under passion and prejudice against the defendant." No request was made for such an instruction, and the jury was instructed as to the burglary only. No prejudice appears, and the point is overruled.

Point XII reiterates the contention that the testimony of Kellison and Clapsaddle was uncorroborated and the jury was not properly instructed as to such testimony. Again, no request was made for such an instruction. See State v. Garton, Mo., 371 S.W.2d 283, and State v. Dunlap, Mo., 408 S.W.2d 76. The contention is without merit for the same reason as that contained in Point XIV, that the court erred in failing to instruct the jury that appellant had no burden to prove or disprove any facts in the case. Points XII and XIV are overruled.

Officer John Davis prepared and used a diagram of the scene of the crime which he used in his testimony. Appellant says the diagram was incomplete and inaccurate, and was admitted over his objections. There was no objection to the diagram, and Davis was cross-examined at length with respect to its accuracy. Nothing is preserved for review as to Point XV raising for the first time the admissibility of the diagram, and the contention is overruled.

By Point XVI, appellant says the court erred in permitting the state to make statements as to evidence which would be presented in the case, which evidence was never presented. It is said that counsel for the state referred to the fact that appellant actively assisted in the commission of the crime, a fact never proven at the trial. No objection was ever made to the opening statement, and, as above outlined, the proof showed, as the jury could and did find, that appellant did actively assist in the commission of the crime.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.