STATE of Missouri, Respondent,

v.

Lawrence BAKER, Appellant.

No. 58117.

Supreme Court of Missouri,
En Banc.

June 9, 1975.

Motion for Rehearing or to Modify
Denied July 14, 1975.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Duncan & Russell, William E. Shull, Austin F. Shute, Kansas City, for appellant.

Ralph L. Martin, Pros. Atty., Jackson County by Robert Frager, Asst. Pros. Atty., Kansas City, Amicus Curiae.

FINCH, Judge.

Appellant, tried by a jury on an information containing three counts, two charging murder in the first degree and one robbery in the first degree, was found guilty on all three counts. He was sentenced to life imprisonment on each murder count and to imprisonment for 99 years on the robbery count. Citing § 546.480,[1] the trial court ordered the sentences to run consecutively. An appeal was taken to this court. We retain jurisdiction thereof pursuant to the general order of this court dated April 9, 1973.

This appeal was heard originally in Division One where an opinion reversing and remanding for new trial was written but not adopted. The case then was transferred to the court en banc where it was reargued. Portions of the opinion written in Division One are utilized herein without the use of quotation marks. We reverse and remand for resentencing.

Appellant does not question the sufficiency of the evidence. The jury reasonably could find therefrom that: On November 20, 1971, John D. Kemp was the manager of a Conoco service station at 75th and Prospect, Kansas City, Jackson County, Missouri; that William G. Simmons was an employee of Mr. Kemp; that around 10:00 p.m., Lawrence Baker and Amos Alonzo Wright entered the station armed with pistols; that they confronted the station personnel and demanded money from the cash register; that after they obtained the money, they shot and killed both station attendants; that $105, taken in the robbery, was divided between the robbers.

---

1. All statutory references are to RSMo 1969, V.A.M.S. unless otherwise indicated.

Appellant, in his motion for new trial and in his original brief in this court, asserts that the court erred (1) in overruling his motion to discharge the trial jury and declare a mistrial "in that the State, through the prosecutor, deliberately and wilfully used its peremptory challenges to strike all Negroes from the jury panel and has done so for many years in all similar jury cases, thus denying the defendant's right to a fair trial" and (2) in failing to hold an evidentiary hearing on said motion.

These contentions arise in these circumstances:

Upon conclusion of the voir dire examination of prospective jurors, the State and defense made their peremptory challenges. The State exercised four of its fifteen challenges to remove the four Negroes from the panel, and defendant then filed a verified motion to declare a mistrial and discharge the jury. The motion included these allegations:

"3. The State, through its representative, John T. Peak, used its peremptory challe[n]ges to strike each and every Negro on the venire panel, thus excluding Negroes from the petit jury.

"4. That the State, through John T. Peak, by using the peremptory challenges to strike Negroes in case after case, whatever the circumstances may be, but particularly where the accused is a Negro, is responsible for the removal of Negroes who have been selected as qualified jurors by the Jury Commissioner and who have survived challenges for cause.

"5. That the practice by the State of systematically excluding Negroes from a petit jury denies Defendant equal protection of the law and is contrary to the Fourteenth Amendment of the Constitution of the United States."

Appellant's contentions do not dispute that the qualification of veniremen is a matter within the discretion of the trial court. State v. Wilson, 436 S.W.2d 633 (Mo.1969). Neither does he dispute that the State may use its peremptory challenges to remove Negroes from the jury in a particular case. See, e. g., Brown v. State, 470 S.W.2d 543 (Mo.1971); State v. Davison, 457 S.W.2d 674 (Mo.1970).

Appellant's charges of abuse of discretion in this case are based upon a quotation from Swain v. Alabama, 380 U.S. 202, 223–24, 85 S.Ct. 824, 837, 13 L.Ed.2d 759 (1965), where the Court said:

"We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. . . In these circumstances, given even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purpose of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify."

Appellant asserts that the allegations of the verified motion, if taken as true, bring his case within the quoted pronouncement; and that if not accepted as true, the court erroneously denied him a hearing to make such proof. We disagree.

Although the appellant adopts some of the language of Swain v. Alabama, *supra,* to frame his motion, he does not allege facts necessary to prove the kind of discrimination condemned by that case. In *Swain,* the defendant alleged and proved that no blacks had sat on a petit jury in a particular county for a period of fourteen years. But even this was not enough; the United States Supreme Court held that he must also show the prosecutor's responsibility for such a result, since defense counsel share at least an equal role in the peremptory process. In the case before us, the defendant did not allege that there have been no blacks on petit juries for any given period of time, which allegations might give rise to a fair inference of improper discrimination and abuse of the peremptory challenge. Furthermore, the defendant emphasized that blacks have been excluded "particularly where the accused is a Negro." The clear inference from this allegation is that Negroes are not excluded from juries when the defendant is not a Negro. The assumption that this allegation shows a violation of *Swain* indicates a misreading of that case. To comport therewith the defendant must allege that the exclusion of blacks is made "in case after case, whatever the circumstances, whatever the crime and *whoever the defendant or the victim may be* . . with the result that no Negroes ever serve on petit juries . . . ." 380 U.S. at 223, 85 S.Ct. at 837. (Emphasis added.) The motion was properly overruled without hearing.

Appellant next charges that the court erred in failing to instruct the jury "that the defendant had the right not to take the stand and testify and that such action should not be held against him in that the jury may have considered the defendant's failure to testify in arriving at its verdict." An instruction to that effect was tendered by defendant but it was refused by the trial court.

A long line of Missouri cases have held that it is not error to fail to instruct the jury on a defendant's right not to take the stand and testify. Some of the more recent cases so holding include State v. Sawyer, 484 S.W.2d 242 (Mo.1972); State v. Hutchinson, 458 S.W.2d 553 (Mo. banc 1970); and State v. Deiter, 446 S.W.2d 609 (Mo.1969). Appellant recognizes that this has been so but contends that the rule should be changed, citing in support thereof the concurring opinion of Judge Donnelly in State v. Hutchinson, *supra,* wherein he expressed the view that such an instruction is permissible under Missouri law and that in future cases such an instruction should be given if defendant does not object thereto.

Subsequent to the decision in *Hutchinson,* Rule 26.08 [2] was amended effective September 1, 1973 (which was after the trial of this case) to provide that if a defendant does not testify and he so requests, but not otherwise, the court shall instruct the jury that "under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inferences of any kind may be drawn from the fact that the defendant did not testify." See also MAI–CR 3.76 and Notes on Use, effective January 1, 1974. The fact that our court has concluded to amend our rules and to provide in our pattern criminal instruction volume that on and after September 1, 1973, such an instruction shall be given if requested by a defendant does not mean that refusal of the instruction at the time this case was tried was reversible error or that appellant is entitled to a new trial on that basis. As Judge Donnelly's concurring opinion in

---

**2.** All citations to rules are to V.A.M.R. unless otherwise indicated.

*Hutchinson* recognized, such an instruction is not constitutionally required.

█ Finally, in a pro se brief filed by appellant in Division One, supplemented before the court en banc by an additional brief by counsel for appellant, we are requested, under Rule 27.20(c) (the plain error rule), to consider two additional propositions. First, it is contended that appellant was entitled to a separate jury trial on each charge and that he cannot constitutionally be tried on multiple charges in a single trial. Secondly, appellant claims that mandatory imposition of consecutive sentences under § 546.480 as a result of being charged in a multi-count information under Rule 24.04 resulted in a deprivation of his right to equal protection of the laws in violation of both the federal and state constitutions in that the trial judge was not permitted to exercise his discretion on whether sentences should be concurrent or consecutive.

It is clear that there is no merit in the first of these contentions. A defendant does not have either a federal or state constitutional right to be tried on only one offense at a time. The federal courts have recognized this fact in Rule 8(a) of the Federal Rules of Criminal Procedure. That rule provides that "[T]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." This rule has been described as constituting essentially a restatement of statutory and familiar law and as not violating due process of law. L. Orfield, Criminal Procedure Under the Federal Rules § 8:47 (1966). When a defendant is so charged, the multiple counts are tried together unless the court, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, orders separate trials or grants other relief. Orfield, *supra,* § 8:56.

█ Likewise, in Missouri, joinder of certain offenses is permitted by rule of court.[3] In addition, statutory provisions, some of which date back as early as 1835, have permitted joinder of certain offenses in a single indictment or information. For examples, see §§ 545.120, 545.130 and 560.110. When so authorized, it is clear that trial of the separate offenses in a single trial is permissible. State v. Walker, 484 S.W.2d 284 (Mo.1972); State v. Terry, 325 S.W.2d 1 (Mo.1959).[4] We overrule appellant's first pro se assignment.

█ A much more difficult question is raised by appellant's second pro se contention that mandatory consecutive sentences

**3.** As adopted April 14, 1952, this rule read as follows:
"Indictment or Information—Counts—When Permitted
Counts for larceny and embezzlement, or for larceny and obtaining property by false pretenses or tokens, or for burglary and larceny in connection with such burglary, may be joined in the same indictment or information. Any indictment or information may contain counts for the different degrees of the same offense or for any one of such degrees."
Effective July 1, 1971, Rule 24.04 was amended to read as follows:
"Indictment or Information—Joinder of Offenses
All offenses which are based on the same act or on two or more acts which are part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts, or in the same count when authorized by statute. Any indictment or information may contain counts for the different degrees of the same offense or for any one of such degrees.

**4.** While our ruling on this issue is not based thereon, the fact is that appellant herein expressed to court and counsel his desire to have the three counts tried together. Out of the hearing of the jury but with appellant present, counsel for defendant stated to the court that he could ask for a severance but that his client wanted the three counts tried together. Appellant confirmed this to the court.

imposed on him under the provisions of § 546.480 deprived him of equal protection. The unadopted divisional opinion sustained this contention, concluding that Rule 24.04 is unconstitutional for that reason. This is the position taken in the supplemental brief filed before the court en banc by counsel for appellant. However, an amicus curiae brief filed by the prosecuting attorney of Jackson County takes the position that Rule 24.04 is not unconstitutional and that the problem of denial of equal protection is caused by and arises from the provisions of § 546.480. Such problem exists, says amicus curiae, even where there is no multi-count information or indictment. We conclude, for the reasons we subsequently detail, that a denial of equal protection does exist but that the problem arises from § 546.480 rather than Rule 24.04.

Rule 24.04 is a procedural rule. It, like Rule 8(a) of the Federal Rules of Criminal Procedure, merely permits joining in one information or indictment certain related multiple offenses which otherwise would have been charged separately. It does not mandate any difference in treatment between those charged jointly and those charged in separate informations or indictments. It makes no provision with respect to the amount of punishment to be imposed or whether sentences shall be concurrent or consecutive.

Sec. 546.480, on the other hand, does deal with punishment to be imposed on convicted offenders, and is not simply a procedural statute. It provides as follows:

"When any person shall be convicted of two or more offenses, before sentence shall have been pronounced upon him for either offense, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior conviction."[5]

Even in the absence of any legislative history, it is evident that the purpose of this statutory provision is to insure that some multiple criminal offenders are to be punished more severely than others. However, it is equally apparent that the section does not apply to all convicted multiple offenders. *It applies if, but only if, a defendant is convicted of at least two offenses before he is sentenced for either offense.* The question presented is whether such a classification is reasonable. Does it result in irrational inequality of treatment for multiple criminal offenders?

We consider this question in the light of decided cases construing the federal equal protection clause. In Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), an Oklahoma statute provided for sterilization of habitual criminals but contained exceptions with reference to convictions for offenses arising out of prohibition, revenue violations, embezzlement or political offenses. The Supreme Court found that the statute resulted in a violation of a defendant's equal protection rights, saying, 316 U.S. at 541–42, 62 S.Ct. at 1113:

"* * * Sterilization of those who have thrice committed grand larceny with immunity for those who are embezzlers is a clear, pointed, unmistakable discrimination. Oklahoma makes no attempt to say that he who commits larceny by trespass or trick or fraud has biologically inheritable traits which he who commits embezzlement lacks. Oklahoma's line between larceny by fraud and embezzlement is determined, as we have noted, 'with reference to the time when the fraudulent intent to convert the property to the taker's own use' arises. Riley

5. This section first appeared in RSMo 1835, p. 213, § 9. No legislative history explaining the purpose of this section exists and in the very limited number of cases which have referred to and construed this provision, we find no case which has undertaken to ascertain or state the purpose of this statutory provision.

v. State, *supra*, 64 Okl.Cr. [183] page 189, 78 P.2d [712] page 715. We have not the slightest basis for inferring that that line has any significance in eugenics, nor that the inheritability of criminal traits follows the neat legal distinctions which the law has marked between those two offenses. In terms of fines and imprisonment the crimes of larceny and embezzlement rate the same under the Oklahoma code. Only when it comes to sterilization are the pains and penalties of the law different. The equal protection clause would indeed be a formula of empty words if such conspicuously artificial lines could be drawn."

Similar reasoning is found in State v. Berkley, 92 Mo. 41, 4 S.W. 24 (1887), wherein the court dealt with a statute providing that when in a criminal case the adverse party consents that the facts set out in an application for continuance due to an absent witness shall be taken as the testimony of such witness, the trial shall not be postponed. This court held that when due diligence to obtain such witness was shown, the statute violated a party's constitutional right to have process to compel the attendance of defense witnesses. The court found that the statute produced a denial of equal protection, saying, 4 S.W. at 27–28:

"Moreover, I regard section 1886 as in plain violation of section 1 of the fourteenth amendment of the constitution of the United States, which forbids that any state 'deny to any person the equal protection of the laws.' I illustrate this view in this way: Here are two defendants in the same court, both on trial for their lives. Both make equally meritorious applications for a continuance. In one case the prosecuting attorney graciously waives the interposition of his *veto*, and the trial court is consequently *allowed* to exercise its ordinary judicial discretion, and, the grounds therefor being ample, the continuance goes, and *that* defendant secures, as a matter of *favor*, what belongs to him as a *home-born constitutional right,*—the attendance of his witnesses. In the *other* case the prosecuting attorney does *veto* the application; does overrule the judicial discretion of the court; does override the constitutional right of the defendant; and so the latter is forced into trial, on whose result his life depends, with nothing better *than a piece of paper*, on which is written something which *on its face* does not bear even so much probative force as *hearsay testimony.* Thus *these* constitutional rights are stricken down by one and the same blow, —the constitutional right of the trial judge to the exercise of his judicial discretion in all cases coming before him; the constitutional right of the defendant to compulsory process for his witnesses; and his constitutional right to the 'equal protection of the laws,' (State v. Hayes, 81 Mo. 574;) thus affording an apt illustration of what Judge Cooley so strongly says: 'The securities of individual rights * * * cannot be too frequently declared, nor in too many forms of words; nor is it possible to guard too vigilantly against the encroachments of power, nor to watch with too lively a suspicion the propensity of persons in authority to break through the *cobweb chains of paper constitutions.*' 2 Story, Const. § 1938."

Likewise pertinent is the case of Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). It considered a New York statute which provided that a person may be civilly committed as insane upon expiration of a penal sentence. The court held that petitioner therein was denied equal protection because pursuant to said statute he was kept at the criminal insane hospital after expiration of his sentence without a judicial determination that he was dangerously mentally ill. In so ruling, the court said, 383 U.S. at 111–15, 86 S.Ct. at 763:

"The director contends that the State has created a reasonable classification differentiating the civilly insane from the

'criminally insane,' which he defines as those with dangerous or criminal propensities. Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660. Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill *at all*. For purposes of granting judicial review before a jury of the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments.

\*    \*    \*    \*    \*    \*

"The capriciousness of the classification employed by the State is thrown sharply into focus by the fact that the full benefit of a judicial hearing to determine dangerous tendencies is withheld only in the case of civil commitment of one awaiting expiration of penal sentence. A person with a past criminal record is presently entitled to a hearing on the question whether he is dangerously mentally ill so long as he is not in prison at the time civil commitment proceedings are instituted. Given this distinction, all semblance of rationality of the classification, purportedly based upon criminal propensities, disappears."

See also Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), and Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

Applying the principle of these cases, we conclude that § 546.480 requires different and unequal treatment for different defendants not based on any legitimate state purpose or interest. It mandates different treatment of defendants without any reasonable or rational basis for that difference. The increased punishment by means of mandatory consecutive sentences is not made applicable simply on the basis that a defendant has committed multiple offenses. It is not based on how many offenses a defendant has committed or how severe they are. It is not based on whether the offenses in question were all committed at the same time or whether they were committed at different times. It is based solely and only on whether the defendant was convicted of at least two offenses before he is sentenced on either of them.

The inequality of treatment resulting from the classification provided in § 546.480 is evident from the following examples.

Example 1. Defendant A kills a person on the morning of January 1. Before he is apprehended, he kills another person that evening. In February the defendant is tried and convicted on the first murder charge. He files a motion for new trial in early March which is overruled by the court on April 1. Meanwhile, in March, defendant is tried on the second murder charge and is convicted. Since he has been convicted of two offenses before he is sentenced on either, § 546.480 applies and the sentences imposed must be consecutive. The trial judge has no discretion as to whether the sentences may be made concurrent.

Example 2. Defendant B also kills someone on the morning of January 1 and a second person that same evening. He, too, is tried in February and convicted. He files a motion for new trial in early March but the judge overrules it promptly and then sentences B to life imprisonment. Thereafter, in late March Defendant B, like A, is tried and convicted on the second murder charge. This time § 546.480 does not apply because this defendant was not "convicted

of two or more offenses, before sentence shall have been pronounced upon him for either offense." Whether the second life sentence is made concurrent or consecutive is within the discretion of the trial judge. He can take into account such things as whether defendant has a prior record and the facts and circumstances surrounding the offenses, whereas in Example 1 the trial judge has no such discretion even though the defendant therein was tried and convicted on comparable dates of identical charges.

Similar hypothetical examples showing disparity of treatment by reason of § 546.-480 could be given ad infinitum. For instance, a first offender who gave two checks on banks in which he had no account would receive consecutive sentences if, for one reason or another, he was convicted on both before being sentenced on either, whereas defendant B in Example 2 would receive consecutive or concurrent sentences at the discretion of the trial judge, even though he might have numerous prior sentences. In this instance the first offender who commits much less serious offenses must be given consecutive sentences whereas the statute does not apply to the habitual offender who committed two murders, simply because of the relationship between the time of convictions and resulting sentences.

■ Equal protection does not require that all persons be dealt with identically. For example, one burglar may be sentenced to four years imprisonment and another may be sentenced to two years or five years. The factual situations can justify this difference in sentences imposed. However, equal protection does require that distinctions in classifications for the purpose of sentencing have some relevance to the purpose for which the classification is made. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); In re J. D. G., 498 S.W.2d 786 (Mo.1973); Ex parte French, 315 Mo. 75, 285 S.W. 513 (banc 1926). That relevance cannot be found when applicabili-

ty of the mandatory consecutive sentencing requirement for multiple offenders has no relationship to such things as seriousness of the offenses committed, the factual circumstances surrounding the offenses, whether the offenses were committed at the same time or at different times or the previous criminal record of defendant, and is dependent solely on the chronological happenstance of whether there were two convictions before sentencing on either offense. Paraphrasing what the court said in *Baxstrom, supra,* we conclude that the capriciousness of the classification established by § 546.480 is thrown sharply into focus by the fact that the benefit of the judicial discretion of the trial judge in the light of all facts and circumstances to determine whether multiple sentences should be concurrent or consecutive is withheld only in those cases wherein it so happens that a defendant is convicted on two charges (whether by plea or trial is immaterial) before he is sentenced on either. A person with a past criminal record is presently entitled to the exercise of the judge's discretion so long as he is not convicted on two new offenses before he is sentenced on either. However, a first offender is not entitled to that discretion if his two convictions occur before sentencing on either. Given this distinction, all semblance of rationality of the classification, supposedly based on multiple crimes and criminal propensities, disappears.

As previously noted, this inequality of treatment flows from § 546.480, not Rule 24.04. Examples 1 and 2 previously given illustrate that the problem exists even where Rule 24.04 is not utilized. To declare Rule 24.04 unconstitutional would not cause the problem inherent in § 546.480 to go away. In some other case, if not this one, we would have to determine the constitutionality of the statute. On the other hand, if § 546.480 is declared to be unconstitutional, as we have concluded it is, there is no problem remaining of unequal treatment in

sentencing resulting from Rule 24.04. That being true, we hold § 546.480 to be unconstitutional.

The conclusion we reach requires that we overrule that portion (but only that portion) of King v. Swenson, 423 S.W.2d 699 (Mo. banc 1968), wherein we ruled that § 546.480 was not violative of the federal and state constitutional provisions prohibiting laws which deny equal protection of the law.

■ Declaring § 546.480 unconstitutional does not entitle appellant to a new trial. The statutory provision in question affected only the sentencing of appellant, not his trial. See North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Accordingly, the judgment of the trial court is reversed and the case is remanded for resentencing wherein the trial judge shall exercise his judicial discretion with reference to whether sentences imposed on the various counts are to be concurrent or consecutive.

DONNELLY, C. J., and MORGAN and HOLMAN, JJ., concur.

BARDGETT, J., concurs in separate concurring opinion filed.

SEILER, J., concurs in separate concurring opinion of BARDGETT, J.

HENLEY, J., concurs in separate concurring opinion filed.

BARDGETT, Judge (concurring).

I concur in the principal opinion except for what is said therein concerning the validity of amended Rule 24.04.

The principal opinion holds section 546.-480 to be unconstitutional for reasons wholly apart from the fact that amended Rule 24.04 exists and facially authorizes multiple-count trials for separate offenses. Thus, the result reached by the principal opinion—reversal and remand for resen-tencing with directions to the trial court to exercise its discretion as to concurrent or consecutive sentences—would obtain in this case even if amended Rule 24.04 did not authorize a multiple-count trial for separate offenses.

A divisional opinion in this case, which was not adopted, held there had been no knowing waiver entered by defendant because the defendant did not know that, by proceeding to trial on multiple counts, he would be subjected to mandatory consecutive sentences if he was convicted of more than one offense. The principal opinion holds section 546.480 unconstitutional and remands the case for resentencing with directions to the trial judge to exercise his discretion with respect to concurrent or consecutive terms. The defendant did request that he be tried on all offenses in one trial. Therefore, any ignorance on the part of defendant with respect to mandatory consecutive sentences is rendered harmless because he will now be entitled to have the trial court exercise its discretion as to how the terms will be served.

Therefore, in my opinion, the issues *necessary* to a disposition of this case do not include the question of the validity of amended Rule 24.04 and, consequently, what is said concerning the validity of that rule is, in my opinion, dictum.

The validity vel non of amended Rule 24.04 ought to await a case in which that issue is necessary to the decision. Nevertheless, since it inferentially may appear that amended Rule 24.04 is held valid in this case, I believe the following observations are pertinent, albeit also dicta.

I agree that neither the Federal nor state constitutions prohibit a person from being tried and convicted for several offenses in the same trial. By that I mean there is no constitutional prohibition against that branch of government which has the power to change substantive (not constitutional) rights from authorizing multiple-count trials and convictions. That branch of

government is the legislative branch. Whether or not a person can be *convicted* in one trial of more than one offense is, in my opinion, a matter of substantive law and can be changed only by legislative action and not by court rule. A defendant can, however, waive that right as was done in the instant case and as was done by the defendant in State v. Terry, 325 S.W.2d 1 (Mo.1959). The *Terry* opinion makes clear that the right not to be convicted of more than one offense in the same trial is a substantive right. This court is prohibited by Art. V, § 5, Mo.Const.1945, V.A.M.S., from changing substantive rights by court rule.

The fact that Rule 24.04, as adopted in 1952, as set forth in footnote 3 of the principal opinion, authorizes the joinder of counts for larceny and embezzlement, or for larceny and obtaining money by false pretenses, or for burglary and larceny, does not, in my opinion, support amended Rule 24.04. The earlier court rule was merely a rescript of sections 545.120 and 560.110 RSMo 1969, V.A.M.S., which constituted statutory authority for such charges and trial.

The principal opinion makes reference to Rule 8(a) of the Federal Rules of Criminal Procedure which rule authorizes multiple-count trials and convictions. However, the Federal rule was adopted pursuant to Title 18 U.S.C. § 3771 which requires that rules with respect to proceedings prior to and including verdict be reported to Congress at or after the beginning of a regular session thereof but not later than the 1st of May, and that the rule shall not be effective until 90 days after it is so reported. Thus, Federal Rules of Criminal Procedure adopted pursuant to Title 18 U.S.C. § 3771 will have received congressional approval before they become effective.

I have set forth the foregoing in order that my concurrence in the principal opinion will not be understood to inferentially constitute agreement that amended Rule 24.04 is a valid exercise of rule-making power under Art. V, § 5, Mo.Const.1945. That question is, in my opinion, not foreclosed by the court's decision in this case.

HENLEY, Judge (concurring).

I concur and add a word of caution to the trial bench regarding the record that should be made at the time of sentencing.

In a case where, as here, a defendant is convicted of two or more offences at the same time, the terms of imprisonment imposed will run concurrently unless there is a direction of record that they run consecutively. Anthony v. Kaiser, 350 Mo. 748, 169 S.W.2d 47, 49[7–9] (banc 1943). Since the trial judge has the authority from this day on to exercise his discretion in sentencing in cases such as this, he must do so; and, it is imperative that if he determines the sentences should run consecutively that the record show this determination.