**UNITED STATES of America ex rel. Kevin DEAN, Petitioner,**

v.

**Donald WYRICK, Respondent.**

**No. 76–526C(2).**

United States District Court, E. D. Missouri, E. D.

Nov. 19, 1976.

[redacted]

[redacted]

Kevin Dean, pro se, for petitioner.

Timothy J. Verhagen, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

MEMORANDUM OPINION

REGAN, District Judge.

This is a pro se proceeding by a prisoner of the State of Missouri seeking habeas corpus relief. Petitioner was charged, jointly with Charles and Horace Bonner, with two first degree murders, forcible rape and assault with intent to kill in the Circuit Court of the City of St. Louis.

On October 9, 1973, after plea bargaining with the prosecutor, each defendant separately entered pleas of guilty to the two murder counts (reduced for purpose of the bargaining to murder in the second degree), as well as to the rape and assault charges. Each defendant was sentenced to three concurrent terms of 35 years imprisonment on the murder and assault charges and to a consecutive term of 5 years imprisonment on the rape charge.

As had been predicted by Judge Lackland Bloom, the sentencing judge, at the time the guilty pleas were entered,[1] each defendant promptly filed motions under Missouri Supreme Court Rule 27.26 for post-conviction relief asserting that the guilty pleas were involuntary. The sentencing judge was disqualified[2] and a full evidentiary hearing was held on all three motions before another circuit judge, Judge Daniel Tillman.[3] Extensive findings of fact and conclusions of law were made in conjunction with the entry of judgments adverse to each movant. We are concerned at this time only with petitioner Dean. His appeal was unsuccessful. *Dean v. State*, 535 S.W.2d 301 (Mo.App.1976). Transfer to the Missouri Supreme Court was denied. The *Bonner* appeals were equally unavailing. *Bonner v. State*, 535 S.W.2d 289 (Mo.App. 1976) and *Bonner v. State*, 535 S.W.2d 297 (Mo.App.1976).

As grounds for relief in this Court, petitioner alleges that his guilty plea was invol-

1. The judge made the following comment during the course of interrogating petitioner: "Now, when you get up to the penitentiary you'll probably be talked to by some of the jail house lawyers up there and they'll tell you that you made a mistake in entering a plea of guilty and that your rights were violated. You'll *come back here and* you'll want me to set this aside."

2. The sole reason assigned by petitioner for disqualifying Judge Bloom was that he would be a witness in the case, and so could not rule on his own credibility "as per *Tyler v. Swenson*, 427 F.2d 412" (8 Cir. 1970).

3. Although there is but one transcript, the separate motions of the three defendants were separately, not jointly, tried, only the testimony of Judge Bloom being made applicable to all three motions. Judge Tillman received his assignment to hear the petitioner's motion on the basis of the alphabetical listing of Circuit Judges.

untary in that (1) it was not made with an understanding of the nature of the charges against him "and was equivocal not constituting a factual basis for the charges pending," (2) that "it was induced by fraud or mistake, by misapprehension (sic), fear, persuasion, or the holding out of hopes which proved to be false or ill founded," (3) it was not made "with an understanding of the nature of the charges because of ineffective assistance of counsel," and (4) at the time of the plea the alternative of trial by jury was "unlawfully 'chilled'" in violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution.

In response to our order to show cause, respondent has filed copies of the transcripts of the sentencing and Rule 27.26 proceedings (both in one document), all briefs filed in the Missouri Court of Appeals, and the opinion of that Court. In his traverse, petitioner would appear to have narrowed the issues in the case by the following statement, "In short, the 'critical' question in the entire case, is *not* whether the petitioner *knowingly* decided to plead guilty but 'why' he made that decision." We will, however, consider the contentions as originally made.[4] Before doing so, it is well to note the following from the transcript of the pleas and sentencing:

"Q   You can't be made to plead guilty in this case. You have to freely and voluntarily after full understanding of all the rights determine whether you want to plead guilty or not. I do not want to sentence a man who isn't guilty to the penitentiary. So, if you're not guilty, I don't want you to tell me you are. Now, I'm going to ask you whether or not any threats have been made against you in order to get you to plead guilty in this case when you're not guilty? A.   No, they haven't.

Q   Have any promises been made to you to get you to plead guilty when you're not guilty? A.   No.

Q   Have you had full opportunity to discuss the facts in this case with your lawyer? A.   Yes, sir.

Q   Explain to him all the facts that you know about?

A   Uh-huh.

Q   And, he's explained to you your rights in this matter?

A   Yes.

Q   You talked to [your sister, who is now in Court] about it?

A   Yes, I have."

■   Petitioner's initial contention, that the guilty pleas were not voluntary for the reason they were made without an understanding of the nature of the charge against him and "was equivocal not constituting a factual basis for the charges pending," is a mere conclusory allegation wholly unsubstantiated by any credible evidence. When the guilty pleas were tendered, Judge Bloom commenced his interrogation of petitioner with the cautionary statement: "Now, before accepting your plea of guilty I'm going to advise you with respect to what the alternatives are and what your rights are in this matter. *If at any time I say something you don't understand I want you to stop me and tell me you don't understand it and I'll explain it to you.*" It is obvious from the responses made by petitioner that he had no difficulty understanding what was said or what he was charged with. In addition, it clearly appears from the testimony of his attorney (and grudgingly conceded by petitioner) that they had discussed at length the facts of the case against petitioner and the nature of the testimony expected to be given by the witnesses for the State.

The revolting facts of the crimes charged against petitioner and his participation therein were outlined by the Assistant Circuit Attorney at the instance of the Court, following which, in answer to a series of questions petitioner verified his participato-

---

**4.** We take judicial notice of the fact that identical grounds for relief have been asserted by petitioner's co-defendants, Horace W. and Charles Bonner, in their habeas corpus peti-

tions. At this writing, the denial by another judge of this Court of Horace Bonner's petition in Cause No. 76–420C(3) is on appeal.

ry role. We find not the slightest support for his assertion that the pleas were "equivocal."

What petitioner contended in the State courts is that he was "on heroin" the day before (claiming he had purchased it at half price from a fellow prisoner in the jail) and was "high" when he appeared in Court. Yet neither his attorney, the judge or even petitioner's sister saw the slightest indication that petitioner was then under the influence of narcotics. His sister conferred with petitioner for about a half hour prior to the entry of the pleas, and was "sure" he understood what they were talking about. Significantly, although she had observed her brother on previous occasions when his pupils were dilated, his speech blurred and he was unable to carry on a rational conversation, he appeared normal to her in all respects on the day of the plea. The trial judge testified that he would not have accepted the plea had there been any doubt as to whether petitioner was in complete control of his faculties. And petitioner's own recollection of what was said and done at the time of the pleas, as testified to by him at his Rule 27.26 hearing, belies his present claim of lack of understanding on his part.

Petitioner's second contention is that his pleas were induced by fraud, mistake, fear, persuasion and false promises. And indeed, if the credible evidence had demonstrated the verity of this ground, there could be no doubt as to petitioner's entitlement to relief.

It is quite evident from the record that the attorneys for the defendants (by reason of the strength of the state's case) had engaged in intensive plea bargaining with the prosecutor.[5] After first holding out for life sentences, the prosecutor tentatively agreed to recommend three concurrent thirty-five year sentences and a concurrent five year sentence. The facts of the crimes were then outlined to Judge Bloom (who had not participated in the bargaining) and the judge was asked whether pleas based on the reduction of the murder first charges to murder second and a recommendation that each defendant be sentenced to concurrent 35 year terms on the murder and assault charges and 5 years on the rape charge would be accepted. The judge stated that he would not accept such a recommendation. In the course of the discussion which followed, the judge "made it perfectly plain to counsel, based on, what he considered to be the seriousness of the charges, that in the event the jury found the defendants guilty, he would be "inclined to run consecutively whatever sentences the jury assessed." Subsequently, the judge was asked whether he would consider a recommendation that only the proposed 35 year terms run concurrently, with the 5 year term for rape to be consecutive. The Court advised counsel he would accept that recommendation. There is no doubt in our mind that, as he testified, the *judge* "was negotiating with no one." He did not initiate or participate in the plea bargaining process other than to reluctantly acquiesce in the "bargain" after it was made. He made no threats against petitioner, directly or indirectly.

We see no impropriety in the fact that Judge Bloom informed counsel of his purpose to run whatever terms of imprisonment which might be assessed consecutively in the event of a conviction. As he stated in the Rule 27.26 hearing, it was his belief that counsel "had a right to know that." Surely, such information would be of value to an attorney in assessing the situation for the purpose of advising his client. In fact, until the Missouri Supreme Court subsequently held the law to be unconstitutional as a denial of equal protection of the laws (in *State v. Baker,* 524 S.W.2d 122, decided June 9, 1975), Missouri had a mandatory consecutive sentencing statute (Section 546.480 R.S.Mo.) which would have been facially applicable at that time. In *Baker,* the Missouri Supreme Court en banc also held that whether sentences imposed in a

---

5. The Bonners' counsel apparently took the lead role in the plea bargaining and the discussions which followed.

multiple count indictment be concurrent or consecutive should be determined by the trial judge in the exercise of a sound judicial discretion.

As for the sentences to be imposed in the event of a conviction, we note that each of the crimes of murder first degree carried with it a mandatory sentence of life imprisonment (Section 559.030 R.S.Mo.), and that the other two offenses could also have resulted in sentences of life imprisonment (Sections 559.180 and 559.260 R.S.Mo.). Obviously, the plea bargaining as to sentences could not have been effectuated but for the concurrent agreement of the State to reduce the murder first charges to murder second, thereby avoiding the otherwise mandatory life sentences.

■ Inasmuch as petitioner was not present when the attorneys conferred with the judge, the question remaining on this issue is what his counsel actually *told* petitioner respecting the judge's statements and what effect such communication had on the mind of petitioner. We have carefully studied the transcript of the Rule 27.26 hearing. The uncorroborated testimony of petitioner that his attorney told him that if the defendants were convicted, "the judge would give us four life sentences,"[6] is directly refuted by the testimony of the lawyer (which we credit) that what he actually said was that in view of the "serious" nature of the case, a finding of guilty by the jury would result in the imposition of "*a very, very strict sentence*" on each offense, and that "*there was a great likelihood* that each one of those sentences would run consecutive." In our judgment, petitioner's attorney was merely performing his duty in so advising his client. Neither the judge nor the attorney "threatened" petitioner to induce a guilty plea. We find no basis for petitioner's claim of "coercion," psychological or otherwise.

■ It is well settled that "an otherwise valid plea is not involuntary because in-

duced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial." *Parker v. North Carolina,* 397 U.S. 790, 795, 90 S.Ct. 1458, 1461, 25 L.Ed.2d 785 (1970); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). And as said in *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970): "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant [citing cases]. That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage."

■ In this case, petitioner asserts (as his third point) that he received ineffective assistance of counsel. We find no credible evidence whatever to support this contention. Petitioner testified in conclusory terms that his lawyer had (truthfully, we believe) told him that he "didn't have too much defense." Petitioner himself had confessed to the crimes after being given his *Miranda* warnings. He does not now claim to have an alibi, testifying only that he does not know where he was at the time in question.

The fact is that the only "witnesses" petitioner claims that he suggested be interviewed by his attorney could, at most, have testified only that the mothers of the murdered boys were of bad character (and users of heroin). And although petitioner attempted to minimize the extent and nature of his discussions with the lawyer, he conceded that the confession (video taped) of Horace Bonner implicating petitioner had been brought to his attention. Counsel (with ten years extensive experience in the

---

**6.** Petitioner later modified this testimony by stating what his attorney merely told him that Judge Bloom "probably" would give four life sentences if he was convicted. We add that

petitioner's sister, who was present when the attorney advised petitioner to accept the plea bargain, could not corroborate his testimony.

field of criminal law) had taken the depositions of the key state witnesses, and obtained copies of the police report and (the questions and answers) coroner's report, and had discussed with petitioner the testimony which would probably be offered by the State.

Counsel's testimony to this effect was no mere after-the-event attempt to protect himself, inasmuch as he had similarly outlined at the plea hearing the nature of his investigation and his discussions with petitioner, adding that "the investigation I feel is—was very complete, and he's been made aware of what the testimony would be as best I know it." The Court then (prior to accepting the plea) inquired of petitioner whether his counsel had done anything the petitioner asked him not to do or whether his counsel had failed to do anything he was requested to do. In each instance petitioner responded in the negative.

Petitioner's further contention that his counsel "promised" him, in order to induce his pleas, that he would serve only seven or eight years is equally lacking in substantial evidentiary support. His counsel flatly denied that any such discussion had taken place, even hypothetically. And we note that petitioner filed his motion to vacate only 20 days after sentencing. In truth, Judge Bloom had explicitly asked petitioner whether he understood that it was the Court's intention that the 5 year sentence not commence until he had served the 35 year sentences, and petitioner responded in the affirmative.

There is a suggestion in the state court record that possibly a change of venue should have been applied for because of adverse publicity. Aside from the fact that the "publicity" referred to had initially occurred at the time petitioner was arrested, almost ten months before the trial setting and on another occasion four months earlier, counsel testified that in his judgment the City of St. Louis would be the most favorable venue for petitioner's trial. Petitioner himself could not suggest any other place in the state in which he would have preferred a trial. We hold that petitioner's

claim of ineffective representation is wholly without merit.

■ Petitioner's final point, that his plea was involuntary because the alternative of trial by jury was unlawfully "chilled" was raised for the first time in the brief filed by his counsel in the Rule 27.26 appeal. The Court of Appeals held that since the point had not been presented to and ruled upon by the trial court it was not before the appellate court. We have carefully read petitioner's motion to vacate and the many supplements thereto and find no similar contention, so that it is correct to say that petitioner has not exhausted his available state remedies with respect thereto. Points of this nature may not be first raised in the appellate court.

■ The thrust of this contention, as we gather it from the state court appellate brief may be summarized as follows: Petitioner was charged in one indictment with four separate but interrelated crimes, as permitted by Missouri Supreme Court procedural Rule 24.04. However, inasmuch as Section 546.480 R.S.Mo. mandated consecutive sentences in situations in which a person is convicted of two or more offenses before sentence is pronounced for either offense, the effect of trial and conviction upon a multiple count indictment would be to deprive the defendant of the opportunity to be convicted and sentenced on each offense before he might be convicted and sentenced for the others previously tried. On this premise, it was argued in the state court brief that inasmuch as petitioner was faced (under the statute) with mandatory consecutive sentences if he stood trial and was convicted on the four counts, the result was to "chill" his exercise of the right to trial by jury and to "coerce" him into pleading guilty.

A similar contention had theretofore been made in *State v. Neal*, 514 S.W.2d 544 (Mo. 1974) in which the defendant actually stood trial. In overruling the contention, the Missouri Supreme Court there pointed out that even if the defendant had pleaded guilty to all counts, it was purely speculative as to whether or not the trial court

would have sentenced him on each count prior to taking his guilty plea on the subsequent counts. That is, the mandatory consecutive sentencing statute could conceivably have applied even to a guilty plea. Petitioner's state court brief distinguished the *Neal* case on the premise that in petitioner's case the judge had clearly stated that if petitioner was convicted by a jury, the sentences would be consecutive but that he would accept a recommendation for concurrent sentences (as to three counts) in the event of a plea.

It is obvious to us that neither counsel nor the judge had Section 546.480 in mind during their discussions. Otherwise, there would have been no reason for counsel to have sought to ascertain the judge's feelings on whether he would make concurrent or consecutive the punishment which might be assessed by a jury, nor for the judge to have stated that in the event of a jury conviction he "would feel inclined [because of what he considered the seriousness of the charges] to run the sentences all consecutively." Clearly, the judge was speaking of the exercise of judicial *discretion*, whereas the statute would not have permitted the exercise of such discretion.

Much of the foregoing is now academic in that, as previously noted, the Supreme Court of Missouri (during the pendency of petitioner's Rule 27.26 appeal) ruled in *Baker*, supra, that Section 546.480 was unconstitutional, but that whether sentences are to be concurrent or consecutive (whether or not there is a multi-count indictment) is in *every* instance for the trial judge to determine in the exercise of a judicial discretion. Hence, on the merits, petitioner could not prevail on this ground.

In truth, as appears from the dissenting opinion in *Neal*, supra, the judges of the Circuit Court of the City of St. Louis, including the sentencing judge in this case (see *State v. Johnson*, 499 S.W.2d 371, (Mo. 1973)), have acted upon the assumption that Section 546.480 did not apply to multiple count indictments, an assumption which the Missouri Court of Appeals, St. Louis District, had held was correct, in *State v. Hud-*

*son*, 508 S.W.2d 707 (Mo.App.1974) and *State v. Henderson*, 510 S.W.2d 813 (Mo. App.1974). That the judge acted upon this assumption is evidenced by the fact that he accepted the guilty pleas (and thereby convicted petitioner) on all four counts before sentencing petitioner.

In addition, there is not a scintilla of evidence in the record that the mandatory provisions of Section 546.480, even as affecting the multi-count indictment, had *any* bearing whatever on petitioner's decision to plead guilty instead of standing trial. He did not so testify, nor did he even indicate he was aware thereof.

■ .Petitioner has moved for an evidentiary hearing in this Court, contending that the state court judge who heard his Rule 27.26 motion "was biased and prejudice (sic) and denied petitioner the right to have an independent observation of his witnesses and their credibility as they testified before the Court." He argues that his state court hearing was "unfair," on the contention that in a class action filed by Horace Bonner, Judge Tillman "was later [*Bonner v. Circuit Court*] linked to threats and intimidation of a class of persons," so that inasmuch as the hearing judge "was sued for his involvement with pleas of guilty which were the product of coercion and threats," "the only way to correct the injustice that has been done by allowing a Judge to sit in Judgement (sic) who is guilty himself of crimes far worse than the sentencing Judge is to grant petitioner a new evidentiary hearing" before an "opened minded" judge.

Initially, we note that neither in the State courts nor in this Court does petitioner contend he has evidence that the hearing judge was personally biased against him. All that the record shows is that after a recess at which petitioner conferred with Horace Bonner, he brought back a document in Horace's handwriting, and the following colloquy ensued:

"THE WITNESS [petitioner]: Your Honor, I would like at this time to request the Court to stop the proceedings because I have a civil rights complaint currently pending before the United

States Eighth Supreme Circuit Court of Appeals in which I have named your Honor as a defendant, so under these circumstances I don't think your Honor could be fair toward me in this division.

Your Honor, I was—Mr. Schmidt [his counsel] informed me Tuesday at the jail that Horace would have a hearing first and that he would talk to us prior to the hearing this morning. However, I haven't seen him this morning nor talked to him until in the courtroom.

THE COURT: If I have been sued before the Eighth Circuit I am not aware of it. You got any copies of what I been sued for?

THE WITNESS: Yes, sir.

THE COURT: What did I do?

THE WITNESS: I have some copies back in the back.

THE COURT: What did I do? I got to do something before you can sue me, and I didn't want these cases in the beginning; and what did I do?

THE WITNESS: Well, I don't have it all right here with me, but like I said, I got it back in the back.

THE COURT: Your request will be denied.

Can you point out something that I've done, something to you? Kevin, have I done anything to you that you feel—have I mistreated you in any way?

THE WITNESS: No, sir.

THE COURT: Have I done anything wrong to you other than try—have I done everything—is there anything that I've done that you want done otherwise?

THE WITNESS: Sir?

THE COURT: Have I done anything to you that you can complain of? That's a 'yes' or 'no' answer. Have I done anything to you, sir?

THE WITNESS: No."

There is no further reference in petitioner's hearing to the "proceeding" alluded to by him, or to its nature. We do know that it was not the case of *Bonner et al. v. Circuit Court of City of St. Louis, Mo.* (which ultimately reached the Court of Appeals, 8th Cir., see 526 F.2d 1331), for the self-evident reason that the hearing in petitioner's case was held over three months before the *Bonner* suit was instituted in this Court. For information purposes only, in order to glean some knowledge of the matter to which petitioner referred, we have referred to the hearing transcript of Horace Bonner's Rule 27.26 motion which was also tried before Judge Tillman on April 12, 1974. We quote the following from pages 356–357 of that transcript:

"MR. SCHMIDT: Your Honor, I think maybe to keep this—the two points clear: Number one, we have a request that I had previously made for a disqualification of the Court and in this, on the basis that the Court has been named in—I stated a party in a lawsuit in the Federal court. I have been corrected by Mr. Bonner. You are not a party to that suit, but are named as a participant in a joint action. We also have the amendment to the—for a judgment—of motion for a judgment.

THE COURT: Let's take the first one first.

HORACE BONNER: All right, your Honor.

Now you may or may not have been aware that I instituted a civil suit in the Federal District Court. During the time our cases was before—mine was before Judge Nangle and Charles' was before Michael J. Scott. Judge Scott disqualified himself upon his own reason. And Kevin Dean's was originally in front of yourself. During this time all the cases was mysteriously transferred to you. As a result of civil rights—now, so after this I filed a so-called order to the Federal Court to the effect that I received information that you had been reported to the United States Justice Department. I also have an affidavit to substantiate that—correction. That has been forwarded to the Eighth Circuit Court of Appeals, of Larry Shannon. I just wanted to verify the fact that you have been *mentioned* in a civil rights complaint.

With all due respect to this Honorable Court, *I feel like now that you would be fair and impartial towards both sides in*

*this cause,* so I want to direct the record *to reflect the only reason I'm proceedings* (sic) with this hearing—I pray that you won't let the fact that we have a civil rights suit against you make you unfair to us in this case.

THE COURT: I've indicated to your lawyer that I was unaware of any civil rights case, that I had no ax to grind one way or the other. I'll call it as I see it, and that's the way I will—

HORACE BONNER: All right, your Honor."

It is thus apparent not only that Judge Tillman was not a party to the proceeding (as had been stated by petitioner) but that Horace Bonner, the prime movant, waived any claim that Judge Tillman was disqualified. He certainly made clear that he was not then contending that Judge Tillman had any personal bias, interest or prejudice and was satisfied that the judge was fair and impartial.

In addition to the foregoing, none of the briefs filed in the Missouri Court of Appeals on behalf of petitioner made any contention that Judge Tillman should have disqualified himself. We note that in addition to the brief prepared by counsel, Horace Bonner filed on behalf of all three defendants a pro se supplemental brief as well as a reply brief. Whatever the facts may be, they were known to petitioner at the time his appellate briefs were filed. On the face of the state court record, there has been no exhaustion of state court remedies. Petitioner should not be permitted to evade the requirement of such exhaustion simply by requesting a new evidentiary hearing on this Court, a hearing to which a petitioner would not otherwise be entitled if he has received a fair and adequate hearing in the state courts. In effect, what petitioner is asking is that we accept as fact his present contention that Judge Tillman was disqualified to make findings of fact dependent on the credibility of witnesses or that we hold an evidentiary hearing to determine whether Judge Tillman was biased and prejudiced, thereby by-passing the state courts. We decline to do either.

Having carefully read the transcript, there is no doubt in our mind that petitioner did in fact receive a full, fair and adequate evidentiary hearing at which he was afforded every opportunity to and did present all matters now raised by him and at which the material facts were adequately developed. Petitioner does not now contend otherwise, arguing only that we should personally hear the witnesses to assess their credibility instead of deferring to Judge Tillman. In light of this contention, we have made our own independent appraisal of the testimony and have concluded on the basis thereof, that the credible evidence preponderates against petitioner on each ground of his petition.

Admittedly, petitioner had two prior felony convictions. At the hearing, after first testifying that he had not lied when he admitted participating in the killings, he then stated that he "didn't participate. I thought I was pleading guilty to being an accessory to the killings." Although insisting he wasn't present (but didn't know where he was at the time), he admitted that he "knew" about the killings "at the time it occurred." With respect to each of the material answers he had given to Judge Bloom respecting the commission of the crimes, he testified, "I was *lying* then." We by no means imply that these facts impel us to reject petitioner's self-serving testimony. On the other hand, they militate against the summary acceptance of the verity thereof, as insisted by petitioner. Our study of the record gives us no reason to doubt that petitioner's solemn admission of guilt as to each crime at the plea session was truthful and not a lie.

Upon our independent review of the state court record, we find on the basis of all the evidence that upon the advice of competent, effective counsel, petitioner voluntarily, intelligently and understandingly, with knowledge of the nature of the charges and the consequences of his pleas, entered his pleas of guilty. The state court's findings are fully supported by the record and we agree therewith. No further evidentiary hearing in this Court is warranted.

1205

ORDER OF DISMISSAL

The Court having this day entered its MEMORANDUM herein, and for the reasons therein stated,

NOW, THEREFORE, in accordance therewith, IT IS HEREBY ORDERED and ADJUDGED that the petition for a writ of habeas corpus be and the same is hereby DISMISSED.