**Alonzo Jerry WRIGHT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 29050.**

Missouri Court of Appeals,
Kansas City District.

Feb. 28, 1977.

Motion for Rehearing and/or Transfer
Denied April 15, 1977.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from denial, after evidentiary hearing, of motion under Rules 27.25 and 27.26, V.A.M.R., to withdraw pleas of guilty and to vacate and set aside judgments of conviction and sentences [1] of life imprisonment following said guilty pleas on two counts of murder, first degree, and one count of robbery, first degree. Appellant's contentions question (I) whether he was denied his right to effective assistance of counsel, and (II) whether there was conclusive evidence that his guilty pleas were the result of threats of violence and coercion. Affirmed.

On December 3, 1971, an indictment was returned which charged Alonzo J. Wright with the murder, first degree, of John D. Kemp (Count I), the murder, first degree, of William G. Simmons (Count II), and the robbery, first degree, of said John D. Kemp (Count III), at a service station at 75th and Prospect, Kansas City, Jackson County, Missouri, November 20, 1971.

On December 7, 1971, Alonzo J. Wright was arraigned and a plea of not guilty was entered. On December 8, 1971, Lewis E. Pierce, having been employed in defendant's behalf, entered his appearance, and the not guilty plea was again entered on behalf of defendant.

On January 14, 1972, defendant, by his attorney, Mr. Pierce, moved for a mental examination under Missouri's mental responsibility law, Chapter 552, RSMo 1969. On January 19, 1972, the motion was sustained and defendant was transported to Fulton State Hospital for mental examination. A report of opinions, findings, and conclusions by C. E. Merrifield, D. O., dated March 7, 1972, was filed of record and copies were furnished to counsel.

On April 18, 1972, irrespective of the foregoing report finding defendant competent to proceed, defendant, by his attorney, Mr. Pierce, moved for a second mental examination of defendant to be conducted at Western Missouri Mental Health Center. Defendant, by his attorney, also moved to sever trial of the offenses charged in the indictment.

On April 25, 1972, defendant, with his attorney, Mr. Pierce, appeared in open court, withdrew his not guilty pleas previously entered on December 7 and 8, 1971, and entered pleas of guilty to all three charges in the indictment. The court, the Honorable Thomas J. Stubbs, after determining, among other things, that defendant had full opportunity to consult with counsel and that his pleas did not result from inducements or promises, accepted his guilty pleas and sentenced him as aforesaid.

On June 9, 1975, Alonzo J. Wright initiated this proceeding by filing his motion to vacate. On October 1, 1975, and March 16, 1976, movant amended his motion and, as so amended, his motion was heard March 22, 1976.

1. The sentences on the murder counts were ordered to run consecutively; the sentence on the robbery count was ordered to run concurrently with the other two sentences.

Movant, Alonzo J. Wright (Jr.), testified he was arrested November 24, 1971, for the crimes of robbery and murder. Subsequent to the arrest, his father hired Lewis Pierce to represent him. According to Alonzo, Jr., Mr. Pierce visited him once in the jail for about three minutes; he and Mr. Pierce never discussed the case, elements of the crime, trial strategy, police reports, or defenses. He told of threats "if either of us was picked up and charged with the crime, that we were to take the blame for it; and that if we didn't our families would be harmed." At the proceedings on his guilty pleas, he was before the court and conferred with his attorney and his father. His attorney indicated the difficulties "because of the confession," and the risk of the death penalty; and his father said a guilty plea "was the only way and that if I didn't do anything else, to do that for him."

Movant's father, Alonzo J. Wright, Sr., claimed he was not permitted to see his son at the police station following the arrest. On November 26, 1971, he employed Mr. Pierce as counsel for his son. "Mr. Pierce took the case for the sum of $6,000.00," and they spoke numerous times of a mental defense. At one time, he said "he wanted a thousand dollars to take my son to a private doctor, which I paid for a private psychiatrist which my son never did get." He stated that Mr. Pierce never gave him any messages to give to his son about the case. Mr. Wright stated that on the date of the guilty pleas he told his son that he should plead guilty. He recited also that he had told Mr. Pierce of threatening calls which he thought came "from the family of the people that was killed." He also reported the calls to the F.B.I. He did not communicate any knowledge of threats to his son.

Lewis E. Pierce has practiced law for twenty-five years and has specialized in representation and defense of persons charged with crime. In representing Alonzo J. Wright, he met with him and discussed his case between "six to ten times." He was unable to be specific as to dates because Mr. Wright, Sr., had been given his file at some time after the guilty pleas were entered. "I have a recollection * * * of discussing with him his confession, of which I had a copy * * * as well as all the statements involving him by other people. * * * it was a very damaging statement. * * * I filed a Motion to Suppress. * * * eventually we got done with the fact that he had signed this confession and that the statements in it were true; and that * * * was necessary for me to know * * * in order for me to determine what would be the best type of defense. * * * after talking it over with Alonzo I felt that it was a very damaging piece of evidence." The State's file, to which he had access, contained confessions by other people, particularly a "confession by Lawrence Daniel Baker [2] * * * wherein he testified * * * that Alonzo was the one that did the shooting of both people. He asked Alonzo why he had to kill them, there was no reason for it, he only got $105.00 for killing two people." He also had copies of statements of Sharon Bishop, Willie Anderson, and John Sharriff which implicated and identified "both Baker and Alonzo * * * as the people * * * in the station immediately before the murders." He met with Mr. Wright, Sr., "many many times. * * * He wanted me to do anything I could to keep his boy from getting the death penalty. Mr. Wright was aware of this confession * * * [and] the other statements; we talked about them. The discussion all the way along was what could be our possible defenses * * and the only possible defense * * * in the light of all the statements and all the discovery * * * was a mental defense; and we discussed that a number of times. * * * he went to Fulton and they found him competent to stand trial. Out of an excess of caution * * * I requested another one which was given to him by Dr. Zwerenz * * * and Dr. Zwerenz found him competent; that, notwithstanding, I

2. Lawrence Baker was tried to a jury, convicted of these crimes, and sentenced to life imprisonment on each murder count, and to 99 years' imprisonment on the robbery count. The conviction was affirmed. *State v. Baker,* 524 S.W.2d 122 (Mo. banc 1975).

filed a motion * * * to let the State know that we were going to depend on the defense of diminished responsibility in case we went to trial, because I felt if we did go to trial and the death penalty was going to be asked for that our best shot was a mental defense * * *." The father did not communicate any threats "until after the guilty plea * * * if he had mentioned it before it wouldn't have been a proper plea * * *." In his discussions with Alonzo (Jr.), "it was my impression that he felt that if this was a dangerous case to him, he wanted to escape the death penalty, and if I felt the evidence was strong enough * * he would consider a guilty plea. That's as fair as I can be to him." In discussions between himself and his client and his client's father, "I wanted us all to talk together to be sure that there was no question about what they wanted. I was ready to go to trial; if he wanted to plead guilty the State had agreed that they would not * * * ask for the death penalty and I told him [them] about this. * * * after I discussed the alternatives * * * I asked them to discuss it so that they could have an absolute understanding between themselves * * *. They told me that they felt in the light of all the facts and the circumstances as I had described it to them and as they knew it, that they felt that a guilty plea would be better than taking a chance with the death penalty in the trial."

Appellant argues (I), emphasizing favorable testimony given by himself and his father to the effect that counsel failed to talk with his client sufficiently to develop a defense and that his actions coerced him to waive valuable trial rights, that he did not receive effective assistance of counsel.

He argues (II), again emphasizing his own and his father's testimony that he pleaded guilty because of threats of violence to his family and counsel's threat that he would get the death penalty if he went to trial, that his guilty pleas were thus involuntary.

The difficulty with both of appellant's contentions is that they disregard credible evidence tending to prove the contrary, as found by the trial court.

In proceedings under Rules 27.25 and 27.26, V.A.M.R., to withdraw a guilty plea and to vacate the sentences which are imposed as a result, the burden is on the defendant to prove by a preponderance of the evidence that manifest injustice has occurred, State v. Jackson, 514 S.W.2d 638 (Mo.App.1974); and conflicts in the evidence are for the court to resolve, Spencer v. State, 534 S.W.2d 598 (Mo.App.1976).

The undisputed facts, particularly those found from the guilty plea proceedings, and the testimony of Mr. Pierce, were obviously accepted by the trial court as the credible version of the facts, and that version stands in contradiction of appellant's case. It also demonstrates that Alonzo J. Wright received the effective assistance of counsel to which he was entitled, and that he failed in his burden to demonstrate that alleged acts or omissions of counsel went beyond errors of judgment or strategy and were of such character as to result in deprivation of the right to a fair trial. Cook v. State, 511 S.W.2d 877, 881 (Mo.App.1974); Crow v. State, 514 S.W.2d 13, 14 (Mo.App. 1974); Johnson v. State, 516 S.W.2d 500, 501 (Mo.App.1974); Owens v. State, 543 S.W.2d 810, 811 (Mo.App.1976).

Similarly, the undisputed facts and the testimony of Mr. Pierce provide sufficient evidence upon which to deny appellant's second contention. The father's part in the determination to enter guilty pleas does not support a charge that Alonzo J. Wright was coerced to plead guilty. The father is shown to have weighed the alternatives, and his inducement as a parent does not constitute coercion warranting a conclusion that his son's guilty pleas were involuntary. Schuler v. State, 476 S.W.2d 596 (Mo.1972). Nor does Mr. Pierce's part in the determination that his client plead guilty rise to coercion. He advised his client of the difficulties in defending the case and the risk of a death penalty, all of which appears to have been understood and considered by the client. Mr. Pierce had a duty to provide such information to his client, Stewart v.

*State,* 542 S.W.2d 544 (Mo.App.1976); *Goodloe v. State,* 486 S.W.2d 430 (Mo.1972); and if the client's decision to plead guilty was influenced by the possibility of the death penalty, such fear did not render his guilty pleas involuntary, *Taylor v. State,* 539 S.W.2d 589 (Mo.App.1976); *Beeman v. State,* 502 S.W.2d 254 (Mo.1973). The threats of violence to the family of Alonzo J. Wright (Jr.), if so, did not enter into his decision to plead guilty because they are not shown to have been communicated to him or to counsel until after the guilty pleas were entered. Too, the testimony on the subject of threats is vague and inconclusive and the court was not bound to give it credence. *Bonner v. State,* 535 S.W.2d 297 (Mo.App.1976).

Judgment affirmed.

All concur.